IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAY AINSWORTH, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-CV-694-JHP-PJC |
| ) | |
| INDEPENDENT SCHOOL DISTRICT NO. 3 ) | |
| OF TULSA COUNTY, OKLAHOMA, ) | |
| ) | |
|    Defendant. ) | |

## ORDER and OPINION

Now before the Court are Defendant's Motion for Summary Judgment, Plaintiff's Response in opposition, and Defendant's Reply thereto. Upon review of the briefs, and for reasons stated herein, Defendant's Motion is GRANTED in its entirety.

## Background

From the undisputed facts in this case, the Court finds the following:

Plaintiff Jay Ainsworth worked for Defendant School District for approximately four months as a substitute teacher. School districts employ substitute teachers on an "on-call" basis and pay them on an hourly basis. Substitute teachers do not earn teacher retirement credits. They may be terminated at any time, with or without cause, and are expressly excluded from the due process protections provided to regular classroom teachers.[1]

---

[1] 70 Okla. Stat. § 6-101.23 (2001).

1

Ainsworth suffers from epilepsy. He alleges that the School District terminated him because of his disability in violation of the Americans with Disabilities Act (ADA).[2] However, the School District states that it removed Ainsworth from the list of eligible substitute teachers after receiving student complaints about Ainsworth's conduct in the classroom.[3] For example, eighth grade students at Haskell Middle School reported that Ainsworth instructed them to talk about sex. They also reported that Ainsworth licked the chalkboard, perhaps in a provocative manner or perhaps to clean it, and physically pushed a student into the hall and left him there for the remainder of the class period. Sixth grade students at Sequoyah Middle School reported that Ainsworth attempted to access a prohibited website.[4] When the principal at Sequoyah went to investigate this report, she also noted that Ainsworth was not maintaining proper classroom control. The School District notes that these are reasonable and non-pretextual reasons for discharging a substitute teacher.

The School District further states that its Director of Human Resources was not aware that Ainsworth suffered from epilepsy or any other disability when she removed his name from the list of eligible substitute teachers. Ainsworth admits that he did not disclose that he suffered from epilepsy when he applied for employment with the School District, but states that certain School District employees knew about his condition. In fact, Ainsworth once reported to

---

[2]*See* 42 U.S.C. § 12101 *et seq*.

[3]Ainsworth notes that the students' complaints were not "uniform and seamless," [Pltf. Resp. at 4] and that, in fact, the students' deposition testimony contained many discrepancies [Id. at 2-9]. The Court finds, however, that the students' comments are not so inconsistent as to create a fact issue on this point. Moreover, Ainsworth does not dispute the fact that students complained about his classroom behavior; he merely quibbles over the details of those reports.

[4]Again, Ainsworth denies that he ever tried to access a blocked website, but does not dispute the fact that students reported that he did.

substitute teach at North Intermediate High School, but had to be helped to the nurse's office because an imbalance in his epilepsy medication was making him dizzy. Ainsworth admits that his condition was accommodated that day, and that he continued to receive substitute teaching assignments thereafter.

Ainsworth last worked as a substitute teacher in the School District in December 2001.[5] On April 15, 2002, Ainsworth filed a charge of disability discrimination with the Oklahoma Human Rights Commission. Ainsworth filed the instant case in state court on June 8, 2004, and the School District removed it to this Court on September 9, 2004. The case is now before the Court on Defendant's Motion for Summary Judgment, in which the School District maintains that Ainsworth cannot establish a *prima facie* case of discrimination, or prove that he was terminated because he has epilepsy.

## **Discussion**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if proof thereof might affect the outcome of the lawsuit as assessed from the controlling substantive law. Id. at 249. The presence of a genuine issue of material fact defeats the motion.

---

[5] The parties dispute the exact date and place, but the Court finds these details to be immaterial.

3

In making the summary judgment determination, the Court examines the factual record and draws reasonable inferences therefrom in the light most favorable to the non-moving party. Simms v. Oklahoma, 165 F.3d 1321, 1326 (10th Cir. 1999). The Court also interprets the rule in such a way as to isolate and dispose of factually unsupportable claims or defenses. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is also appropriate if any element of the prima facie case lacks sufficient evidence to require submission to a jury. Anderson v. Liberty Lobby, 477 U.S. at 248-49.

Plaintiff's claim is governed by the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). Under this analysis, a plaintiff must first establish a *prima facie* case of discrimination. McDonnell Douglas, 411 U.S. at 802. This may be done by showing that (1) the plaintiff is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job, with or without accommodation; and (3) he was terminated under circumstances giving rise to the inference that the termination was based on his disability. Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 878 (10th Cir. 2004). Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to identify a legitimate, nondiscriminatory reason for the challenged action. McDonnell Douglas, 411 U.S. at 802. The plaintiff must then show that the proffered reason is merely a pretext for discrimination. Burdine, 450 U.S. at 253. The plaintiff always retains the ultimate burden of proving that he was the victim of intentional discrimination. Id.; *see also* Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1259 (10th Cir. 2001).

**I.  Ainsworth cannot establish a *prima facie* case of wrongful termination in violation of the ADA.**

**A.  Ainsworth is not necessarily "disabled" within the meaning of the ADA.**

The ADA defines "disability" with respect to an individual as (1) a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) a record of such impairment; or (3) being regarded as having such impairment.  42 U.S.C. §12102(2)(A)-(C).  Whether the plaintiff has an "impairment" within the meaning of the ADA and whether the affected conduct is a "major life activity" as contemplated by the ADA are questions of law.  Doebele v. Sprint/United Mgmt. Co., 342 F.3d 1117, 1129 (10th Cir. 2003). Whether the impairment "substantially limits" the major life activity is a question of fact, but the Court may make the determination on a motion for summary judgment.  Id. at 1129, 1130 n.5.

Here, the parties here do not dispute that Ainsworth is "disabled" because he suffers from epilepsy.  However, the assumption that epilepsy is, as a matter of law, a disability, is incorrect. *Compare* EEOC v. Kinney Shoe Corp., 917 F. Supp. 419, 425 (W.D. Va. 1996), *aff'd sub nom* Martinson v. Kinney Shoe Corp., 104 F.3d 683 (4th Cir. 1997) (finding that "epilepsy should normally be considered an **impairment** under the ADA") (emphasis added), *with* Deas v. River West, L.P., 152 F.3d 471, 477 (5th Cir. 1998) (noting that Martinson "neither discusses nor supports the proposition that seizures constitute a **disability** *per se*," nor provides any "persuasive rationale" for recognizing epilepsy as a disability as a matter of law) (emphasis added).  Instead, "the determination of whether a person is disabled under the ADA should be made on an individual basis with reference to corrective measures taken by the person to ameliorate the effects of the impairment."  Otting v. J.C. Penney Co., 223 F.3d 704, 709 (8th Cir. 2000) (citing Sutton v. United Airlines, Inc., 527 U.S. 471, 482-84 (1999)).  Thus, while epilepsy

5

is clearly a "physical impairment" under the ADA, persons who suffer from epilepsy are not necessarily "disabled." *See, e.g.*, Landry v. United Scaffolding, Inc., 337 F. Supp. 2d 808, 812 (M.D. La. 2004) (finding that plaintiff with epilepsy was not disabled under the ADA because seizures were controlled with medication and did not substantially limit him in any major life activity); EEOC v. Sara Lee Corp., 237 F.3d 349, 352-53 (4th Cir. 2001) (finding that plaintiff with epilepsy was not disabled under the ADA because symptoms she suffered as a result of epilepsy, such as poor sleep habits and forgetfulness, were no more substantially limiting for her than they would be for a non-epileptic person).

Plaintiffs must prove the limitations caused by their impairments are substantial "in terms of their own experience," Albertson's Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999), and the standard for declaring a plaintiff "disabled" is demanding, Toyota Motor Mfg. v. Williams, 534 U.S. 184, 197 (2002). In this regard, and assuming *arguendo* that working is a "major life activity," the Court notes that Plaintiff here was clearly able to perform his duties as a substitute teacher. Even on the one day Plaintiff reported to work feeling dizzy due to his epilepsy medication, he went on to teach. Simply stated, the Court sees no evidence that Plaintiff was "substantially limited" in working, or in any major life activities, such as walking, speaking, or caring for himself, by his epilepsy or otherwise. Because the parties have not put this prong at issue, however, it is not dispositive.[6]

## B. Plaintiff cannot establish a causal connection between his termination

---

[6]The parties also do not dispute that Ainsworth was qualified to perform the essential functions of the job, with or without accommodation, and the Court does not disagree. The Court will therefore not discuss the second element of Plaintiff's *prima facie* case.

### **and his disability.**

In order to satisfy the third prong, a plaintiff must "present some affirmative evidence that disability was a determining factor in the employer's decision." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997); *see also* *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) ("A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of [discriminatory] motive . . . .") (internal quotations and citations omitted). While this burden is "not onerous," it is also not "empty or perfunctory." *Morgan*, 108 F.3d at 1323-24 (internal citations omitted). Certainly, a plaintiff's "bare testimony, speculating that she was fired because of her alleged . . . disability, does not suffice to create a genuine issue of material fact as to causal connection." *Bones*, 366 F.3d at 879. Rather, **some evidence** is needed.

Obviously, an employer must **know** of an employee's disability in order to **discriminate** against that employee in violation of the ADA. *See* *Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996) ("An employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability. . . . "[A]n employer cannot fire an employee 'because of' a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee 'because of' some other reason.") (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) (internal quotations omitted)).

In this case, at least two School District employees were involved in Plaintiff's termination – the Substitute Coordinator, who was Plaintiff's immediate supervisor, and the Director of Human Resources, who was ultimately responsible for making employment decisions regarding substitute teachers. It is undisputed that the Substitute Coordinator knew that

Ainsworth suffered from epilepsy, perhaps as early as October 2001, and certainly no later than December 2001. It is also undisputed that the School District continued to use Ainsworth as a substitute teacher even after the Substitute Coordinator became aware of his impairment. These assignments were apparently made and carried out without any incident of discrimination or necessity for accommodation. It is further undisputed that the Substitute Coordinator received the documented complaints about Ainsworth's classroom behavior, and responded to at least one complaint on November 16, 2001 by stating that Ainsworth should "never again at ANY school" be employed as a substitute teacher.

The parties disagree as to whether the Director of Human Resources knew about Ainsworth's impairment before he was terminated. They also dispute which of these two school district employees decided to fire Ainsworth, although they do not dispute that the Director of Human Resources is ultimately accountable for all personnel decisions. Plaintiff argues that these disputes create a genuine issue of material fact sufficient to overcome summary judgment on this element. However, upon review of the briefs and exhibits attached thereto, the Court finds no competent evidence to support Plaintiff's contention that he was fired because of his disability. Conversely, the Court **does** find competent evidence to support the School District's legitimate, non-discriminatory reason for terminating Plaintiff.

Plaintiff also argued that he was terminated in close temporal proximity to the one time he allegedly had a seizure during a substitute teaching assignment. A protected activity closely followed by an adverse employment action may be sufficient to satisfy the "causal connection" prong of the *prima facie* case. See Annett v. Univ. of Kan., 371 F.3d 1233, 1241 (10th Cir. 2004). However, Plaintiff has offered no evidence that this seizure was ever reported to the

School District.  It is also undisputed that Plaintiff continued to receive substitute teaching assignments well after the Substitute Coordinator became aware of his impairment.  A plaintiff's "bare testimony, speculating that she was fired because of her alleged . . . disability, does not suffice to create a genuine issue of material fact as to causal connection."  Bones, 366 F.3d at 879.

Because Plaintiff has failed to present any "affirmative evidence" beyond his own testimony that his disability was a "determining factor" in the School Board's decision to remove him from the list of eligible substitutes, the Court finds that Plaintiff has not established the requisite "causal connection" between his disability and his termination.

### II.  **Plaintiff cannot show that Defendant's proffered reason for his termination was pretextual.**

Assuming *arguendo* that Plaintiff has established a *prima facie* case, Plaintiff concedes that Defendant met its burden of producing a legitimate business reason for his termination.  The burden therefore shifts back to Plaintiff to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  Morgan, 108 F.3d at 1323 (internal quotations and citations omitted); *see also* Selenke, 248 F.3d at 1260 ("Even though a plaintiff has established a prima facie case, the defendant is entitled to summary judgment unless the plaintiff produces either direct evidence of discrimination or evidence that the defendant's proffered reason for the action taken was pretextual.") (internal citations, quotations and alterations omitted).  The Court does not find that Plaintiff has met his burden to show pretext.

Defendant has asserted, and set forth competent evidence to show, that Plaintiff was terminated because students at Haskell Middle School and Sequoyah Middle School reported that Plaintiff engaged in misconduct when he substituted at those schools. Ainsworth has repeatedly denied that he committed any of the acts reported by the students. He has also set forth countless discrepancies in the students' deposition testimony regarding what they remembered of Plaintiff's misconduct when he was the substitute teacher in their class. However, the contradictions upon which Plaintiff relies are, at best, "minor variations on a central theme," and immaterial for purposes of summary judgment. *See* Hardy v. S.F. Phosphates Ltd., 185 F.3d 1076, 1081 (10th Cir. 1999). The issue is not whether Ainsworth actually did what the students said he did, or whether the students were lying. Instead, the issue is whether the students' complaints, even if inaccurate, were the true reason the School District removed Ainsworth's name from its list of eligible substitutes. *See* id. at 1080 (noting that the "relevant inquiry" in determining pretext is not whether the employer was correct to think that the employee engaged in misconduct, but whether the employer's belief that he did was genuine, rather than pretextual) (citing Giannopoulos v. Brach & Brack Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997)). In other words, in order to show pretext in this case, Plaintiff need not show that the **students** were lying when they reported that he engaged in misconduct, but that the **school district** was lying when it said Plaintiff was terminated based on the students' reports.

Plaintiff admits that "[t]he only contemporaneous documentation of the incident for which Plaintiff was purportedly fired" is an e-mail exchange between the principal at Haskell Junior High School and the Substitute Coordinator. [Pltf. Resp. at 18.] What Plaintiff seemingly fails to appreciate is that this e-mail exchange is also, accordingly, the only contemporaneous

documentation of the School Board's legitimate non-discriminatory reason for terminating Plaintiff, and that no such documentation exists to give rise to any inference that this reason was not genuine. Indeed, the evidence overwhelmingly supports Defendant's proffered reason for Plaintiff's termination, and Plaintiff has failed to raise any question as to whether this reason was a pretext for discrimination.

As further support for his claim that the Defendant's reason for firing him was pretextual, Plaintiff complains that the School District did not engage him in an "interactive process" to determine what accommodations he might need, either upon discovering his disability or upon receiving complaints about his conduct in the classroom. Failure to accommodate is not a separate cause of action before the Court because Plaintiff did not so plead in his Complaint. Even as the complaint relates to "motivation" or evidence of pretext, however, the Court finds Plaintiff's allegations to be without merit. It is undisputed that the School District did everything possible to accommodate Ainsworth on the day he suffered from an imbalance in his epilepsy medication. It is also undisputed that, after being accommodated, Ainsworth was able to teach that day. To the extent that Plaintiff complains about the School District's failure to accommodate his disability after receiving the students' complaints, the Court notes that these complaints are so completely unrelated to Plaintiff's physical impairment as to provide no notice whatsoever to the School District that it needed to engage in the interactive process. To the extent that Plaintiff complains about the School District's failure to investigate the circumstances leading to his discharge, the Court notes that substitute teachers are not afforded due process protection, and the School District is therefore not obligated to follow any policy or procedure to terminate a substitute teacher above and beyond removing that person's name from the list.

11

Thus, Plaintiff's claim for failure to accommodate also fails to demonstrate pretext.

## Conclusion

There being no genuine issue as to any material fact, the Court finds that Defendant Independent School District No. 3 of Tulsa County, Oklahoma is entitled to judgment as a matter of law on Plaintiff Jay Ainsworth's ADA claims. Defendant's Motion for Summary Judgment is therefore GRANTED.

IT IS SO ORDERED this 31st day of May 2006.

_____
James H. Payne
United States District Judge
Northern District of Oklahoma